STATE OF CONNECTICUT *v.* VICTOR JOHNSON
(5502)

DUPONT, C. J., DALY and BIELUCH, Js.

Argued April 2—decision released June 16, 1987

*Mark F. Gross,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the trial court's revocation of his probation. The defendant pleaded guilty to a violation of General Statutes § 21a-277 (b), a section of the state's dependency producing drug laws, and to a violation of General Statutes § 29-38 which prohibits the possession of certain

weapons in motor vehicles. He was sentenced on March 15, 1985, to three years incarceration for the first crime, and one year for the second crime, to be served concurrently. On November 13, 1985, his sentence was modified, by suspending the unexecuted portion of his sentence, and placing him on probation for three years. One of the conditions of his probation to which he agreed by signing his probation agreement on November 20, 1985, was that he remain free of the use of illicit narcotics, and submit to a random analysis of his urine in order to verify his drug free status.[1]

One of the defendant's random urine analysis tests indicated the presence of cocaine metabolites, and a hearing was held by the court to determine whether the defendant had violated this condition of his probation. General Statutes § 53a-32.[2] The court found that the defendant had violated the condition and revoked his probation, ordering him to serve the unexecuted portion of the sentence originally imposed.

[1] The defendant has not raised any question concerning the relationship of this condition of probation to his rehabilitation. The validity of this condition is, therefore, not under review. See State v. Cooley, 3 Conn. App. 410, 413–15, 488 A.2d 1283, cert denied, 196 Conn. 805, 492 A.2d 1240 (1985).

[2] General Statutes § 53a-32 provides in pertinent part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation. . . . At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf. (b) If such violation is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

At the hearing, testimony was heard from the defendant's probation officer, the individual who tested his urine sample, and a pharmacologist. The probation officer testified that the defendant was performing well on probation. The individual who tested his urine testified about the procedure used. He stated that the defendant's urine was tested at a laboratory and was positive for cocaine metabolites, indicating that there had been an ingestion of cocaine by the defendant. The test administered was a syva emmounoassy, with the trade name of EMIT. Since his test was positive, a second EMIT test was administered to the same sample of urine. The second test was also positive. The defendant claimed through his witness, a pharmacologist, that the percentage of error in the EMIT test was between 5 and 10 percent, although no such test is 100 percent accurate. The witness also testified that dual testing of the same urine sample by using the same test was not effective to determine if the results of the first test were erroneous. Rather, it was his opinion that the second test should have been done by a test other than EMIT, as was also recommended by EMIT's manufacturer.

The defendant also introduced into evidence a class action habeas corpus settlement. The action was instituted in another Superior Court on behalf of persons incarcerated in this state and subject to disciplinary action if they were found guilty of intoxication by the correctional facilities disciplinary board. The settlement provided that no inmate could be disciplined for intoxication solely on the basis of an unconfirmed positive test result given by the EMIT system, and that urine samples testing positive by the EMIT system must be subject to a second test using another testing method.

Before reaching the primary issue of this appeal, we must decide whether the defendant's appeal is moot.

During oral argument the defendant informed the court that the defendant had been recently released from custody and placed on intensive probation. Although the defendant is no longer imprisoned as a result of the earlier revocation, this matter is not moot for two reasons. The first is that if he acts in a manner inconsistent with his present probation, and the earlier finding of a probation violation is part of his record, the previous revocation of probation will impact on him adversely. The second is that the revocation order is one of the factors which was considered in subjecting the defendant to the consequences of the more stringent monitoring of his present probation,[3] thus implicating his liberty and privacy interests.

The question of mootness is determined by examining whether there are collateral consequences which attach to the trial court's revocation of parole, or whether the law imposes any further penalty for the revocation. *Carafas* v. *LaVallee*, 391 U.S. 234, 237–38, 88 S. Ct. 1556, 20 L. Ed. 2d 554 (1968); *Ginsberg* v. *New York*, 390 U.S. 629, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968); *St. Pierre* v. *United States*, 319 U.S. 41, 63 S. Ct. 910, 87 L. Ed. 1199 (1943); *Herbert* v. *Manson*, 199 Conn. 143, 143–44 n.1, 506 A.2d 98 (1986). The question of mootness has previously arisen in Connecticut in connection with a conviction and subsequent sentence in the context of habeas corpus proceedings which have extended beyond the period of incarceration. *Herbert* v. *Manson*, supra; *Tracy* v. *Johnson*, 156

---

[3] The conditions of the defendant's previous probation, which are part of the record, include random urinalysis and two telephone reports to his probation officer each week for a year. The conditions of his present probation, which were explained by his attorney at oral argument and were not disputed by the state, are that he must attend weekly meetings dealing with drug abuse, and that he must adhere to a 7 p.m. curfew each night, which is verified over telephone lines by means of an electronic sensor attached to his wrist.

Conn. 630, 632, 239 A.2d 477 (1968); *Whiteside* v. *Burlant,* 153 Conn. 204, 206–208, 215 A.2d 100 (1965); see also *In re Juvenile Appeal (83-EF),* 190 Conn. 428, 429 n.1, 461 A.2d 957 (1983). A defendant's claim of error on appeal in such circumstances survives his release from incarceration and period of parole. Probation, like parole, is a state of conditional freedom from incarceration.

The defendant in this case has diligently pursued his appeal and presently suffers the consequence of a more stringent probation due, in part, to the previous revocation of probation. As he has argued, the overturning of the previous revocation could serve as a basis for modification of his present conditions of probation. The revocation, if left undisturbed, stands as unimpeachable evidence that the more stringent conditions of his probation are necessary. See *Fiswick* v. *United States,* 329 U.S. 211, 221–22, 67 S. Ct. 224, 91 L. Ed. 196 (1946). The defendant now suffers infringement upon his conditional freedom by the imposition of conditions which restrict to a greater degree his liberty and privacy, just as he suffered its complete deprivation by his reincarceration. See *United States ex rel. Bey* v. *Connecticut State Board of Parole,* 443 F.2d 1079, 1086–87 (2d Cir. 1971). It is the revocation of probation which made operative, and continues to effect, his loss of liberty. *Hewett* v. *North Carolina,* 415 F.2d 1316, 1322 (4th Cir. 1969). The interjection of a period of incarceration before the imposition of later and more stringent conditions does not deprive him of his interest in his conditional freedom, or in determining the propriety of its revocation, for if he had never been temporarily reincarcerated, but instead subjected to a modification of conditions, he would still have an appealable final judgment. See *State* v. *Cooley,* 3 Conn. App. 410, 414, 488 A.2d 1283, cert. denied, 196 Conn. 805, 492 A.2d 1240 (1985). The loss of some lesser

degree of his liberty and privacy than would result from continued reincarceration does not render the loss any less grievous. See *Morrissey* v. *Brewer,* 408 U.S. 471, 480–84, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). The probation revocation is a blemish on his prison record which will affect his job opportunities and his standing in the community because it connotes wrongdoing and intractability and is "a burden analagous and in addition to his criminal stigma. See *Hahn* v. *Burke,* 430 F.2d 100, 102 (7th Cir. 1970)." *United States ex rel. Bey* v. *Connecticut State Board of Parole,* supra, 1087. Furthermore, any misconduct which might be grounds for revocation in the future will be considered in the light of this previous revocation. See *In re Appeal of Bailey,* 158 Conn. 439, 444, 262 A.2d 177 (1969); *Whiteside* v. *Burlant,* supra, 206; *Sibron* v. *New York,* 392 U.S. 40, 50, 88 S. St. 1889, 20 L. Ed. 2d 917 (1968). The defendant suffers severe limitations of freedom by the present conditions of his probation, and will continue to suffer such limitation if his claim that his original probation was erroneously revoked is meritorious. See *Carafas* v. *LaVallee,* supra, 239.

" 'It is a well-settled general rule that the existence of an actual controversy is requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow.' *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 [1944]; *Harkins* v. *Driscoll,* 165 Conn. 407, 409, 334 A.2d 901 [1973]; *Roy* v. *Mulcahy,* 161 Conn. 324, 328, 288 A.2d 64 [1971]; see *Tracy* v. *Johnson,* 156 Conn. 630, 239 A.2d 477 [1968]. This statement of law leads to the question of what, if any, practical relief could follow from a determination of the plaintiff's appeal or what actual relief could be granted by this court. . . . Where collateral legal disabilities have arisen, actual relief can be granted by way of a

reinstatement of the appellant's prior legal status. . . . The question at hand, however, is whether there would be any benefit to the plaintiff if this court were to require that the decision of the trial court be reversed." *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 452–53, 352 A.2d 291 (1974).

The benefit to the defendant in this case incident to an overturning of his revocation is both the ability to seek a modification of his present conditions of probation, and the removal of the blight from his record which would haunt him in any future proceedings. We conclude that his appeal is not moot.

The defendant claims that the trial court abused its discretion in revoking his probation.[4] The trial court properly conducted the statutorily mandated hearing, and determined that the defendant had violated the conditions of his probation, and should be reincarcerated. On appeal, our review of the trial court's order of revocation is limited to determining whether the trial court abused its discretion in revoking the probation and invoking the original sentence. *State* v. *Roberson,* 165 Conn. 73, 80, 327 A.2d 556 (1973); *State* v. *Cooley,* supra. In exercising its discretion the trial court must be reasonably satisfied that the terms of the probation have been violated. *State* v. *Roberson,* supra. On review

---

[4] The defendant also contends that he was denied due process and equal protection of the law. He does not, however, cite either the federal or state constitution for these claims, and has failed to support his claims by citation to legal authority or by the formulation of any legal arguments. Therefore, we do not consider them. *State* v. *Chauvin,* 8 Conn. App. 307, 311, 512 A.2d 969 (1986). If the defendant's claim of a denial of equal protection of the law rests upon the class action habeas corpus settlement which he introduced into evidence, he is far from substantiating that claim. That settlement affords protection to persons appearing before and subject to the disciplinary sanctions of a correctional facility disciplinary board because of *alcohol abuse,* and affects their good time credit while incarcerated. The protection which that settlement affords is to a class of persons of which the defendant is not a member.

then, we must examine the evidence offered at the hearing to determine whether the trial court could reasonably have been satisfied that the defendant violated his probation. "In reviewing whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the court's ruling. *State* v. *Brown,* 169 Conn. 672, 702, 364 A.2d 186 (1975)." *State* v. *Amarillo,* 198 Conn. 285, 313-14, 503 A.2d 146 (1986). " 'The aggrieved party, therefore, assumes a heavy burden when seeking to reverse the exercise of judicial discretion.' *State* v. *Jeustiniano,* 172 Conn. 275, 285, 374 A.2d 209 (1977)." *State* v. *Tirado,* 194 Conn. 89, 95, 478 A.2d 606 (1984).

In the statutory probation hearing, the trial court acts as a trier of fact in making findings as to whether the defendant has violated the terms of his probation. See *State* v. *Roberson,* supra. The findings upon which the defendant's probation may be revoked do not have to be proven beyond a reasonable doubt, as do the elements of a criminal offense. *Payne* v. *Robinson,* 10 Conn. App. 395, 402, 523 A.2d 917 (1987), quoting *Roberson* v. *Connecticut,* 501 F.2d 305, 308 (2d Cir. 1974). The finding of fact relevant to a determination of whether the defendant has violated the condition of his probation must be based "upon consideration of the whole record and unless such violation is established by reliable and probative evidence." General Statutes § 53a-32 (b). As the trier of fact, the court was charged with determining the credibility of the witnesses and the effect to be given the evidence. See *State* v. *Egan,* 9 Conn. App. 59, 69, 514 A.2d 493, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). If the record supports the trial court's finding that the defendant failed to comply with the conditions of his probation, the trial court then had the discretion to order a revocation of the probation.

The testimony of the urine tester, if credited by the court, was probative of the condition imposed that the defendant remain free of the use of drugs while on probation. The testimony of the defendant's pharmacological expert, if credited by the trier of fact, indicates that there is some degree of unreliability in the test which was used to determine whether the defendant was violating his probation. The court determined, however, that it was reasonably satisfied that the evidence of the test results established that the defendant violated his probation. The trial court was not required to accept as conclusive, on the issue of this defendant's use of drugs, the testimony of the defendant's expert as to the reliability of the particular test used. See *State* v. *Putnoki,* 200 Conn. 208, 221, 510 A.2d 1329 (1986); *Johnson* v. *Fuller,* 190 Conn. 552, 556, 461 A.2d 988 (1983). The defendant has not established that the court's determination was unreasonable and an abuse of discretion.

The defendant also contends that the trial court erred in its revocation order, claiming that such order required the court to determine also that the beneficial purposes of probation were no longer being served. The trial court, in finding that the defendant violated the conditions of his probation, impliedly found that the beneficial purposes of that probation were no longer being served. *State* v. *Roberson,* supra, 80. The defendant has not demonstrated that the court could not reasonably have concluded that the beneficial purposes of his probation, that is, his rehabilitation and the protection of society, were no longer being served. *Payne* v. *Robinson,* supra, 401.

There is no error.

In this opinion the other judges concurred.